|   |   |   |
|---|---|---|
| | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE | |
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    v.<br><br>FRANCISCO RETANO,<br><br>             Defendant. | Case No. CR18-105-RSL<br><br>ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR COMPASSIONATE<br>RELEASE | |

This matter comes before the Court on defendant's "Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)[(1)(A)]." Dkt. # 38. Having considered the motion and the record contained herein, the Court finds as follows:

### I.    PROCEDURAL MOTIONS

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkt. # 45). The government's motion to seal (Dkt. # 44) is accordingly GRANTED.

### II.    BACKGROUND

Defendant is a 42-year-old inmate currently incarcerated at the North Lake Correction Institution ("North Lake CI"). Dkt. # 43 at 3. On November 7, 2018, Retano pled guilty to distribution of a controlled substance, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Dkt. # 26 at 1. On February 22, 2019, the Court sentenced defendant to forty-eight months of imprisonment and five years of supervised release. Dkt. # 37 at 2–3. Defendant is currently

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on September 8, 2021. Dkts. # 38 at 1, # 43 at 2. He now moves for compassionate release.

### III.    LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; . . .
> > > >
> > > > (ii) . . .
> > >
> > > and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>    (A) **Medical Condition of the Defendant**—
>
>    (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy

    (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

 (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

 (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

 2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

      imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

      This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has recently held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 798 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D. Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

### IV.  DEFENDANT'S CIRCUMSTANCES

#### a.  Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C.

§ 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 38 at 8, # 43 at 6. On March 15, 2021, defendant submitted a request for compassionate release to the Warden, which the Warden denied on April 6, 2021. Dkt. # 38-1 at 170–73. Thirty days have since lapsed such that the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based on his claims that: he contracted COVID-19 during his incarceration, that he continues to suffer long-term physical consequences from this infection, and that he is susceptible to reinfection and exacerbation of these symptoms. Dkt. # 38 at 1–3.

The Court need not reiterate the widely known information regarding the symptoms of COVID-19 and the devastating global impact of the virus. COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable. As of June 7, 2021, the BOP reports that 85 federal inmates and 127 BOP staff have active, confirmed positive COVID-19 test results. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 7, 2021). Since the BOP reported its first case in late March 2020, at least 238 federal inmates and four BOP staff members have died from the virus. Id. North Lake CI currently reports zero inmates with active, positive COVID-19 test results. Id. BOP has classified 123 inmates at North Lake CI as having "recovered" from the virus and two inmates as having died from it. Id. The Court acknowledges that the COVID-19 outlook is not as bleak as it was last spring now that vaccine distribution is underway. See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 7, 2021) (reflecting vaccination statistics).

With respect to defendant's claim that he contracted COVID-19, defendant alleges that upon being transferred to North Lake CI on March 29, 2020, he began to experience "loss of taste, fever, headaches, lung and chest pain, in addition to an exacerbation of the medically documented and treated conditions related to a significantly deviated septum." Dkt. # 38 at 1–2.

Defendant correctly observes that the BOP medical records do not document the symptoms that he alleges he experienced when he transferred to North Lake CI. Dkt. # 38 at 2. Rather, BOP records reflect that defendant arrived on March 31, 2020, he received an intake screening for new arrivals, and no COVID-19 symptoms were reported. Dkt. # 45 at 57–72. The BOP records indicate that defendant was in quarantine for around 14 days, Dkt. # 45 at 3, 57, but the government argues that the quarantine period is not an indication that defendant actually contracted the virus, but rather that this quarantine period was consistent with BOP policy quarantining new arrivals. Dkt. # 43 at 3. Although it is unclear whether defendant was infected with COVID-19, he has not raised any medical condition recognized by the Centers for Disease Control and Prevention as a risk factor for severe illness from the virus.

        Defendant alleges that his "major symptoms have mostly resolved," but he "continues to suffer long-term physical consequences from the infection," and that "[d]espite repeated attempts to obtain medical treatment, such treatment has not been provided." Dkt. # 38 at 2. In particular, defendant alleges that he experiences "shortness of breath and headaches." Dkt. # 38 at 5. Defendant has not cited any specific records documenting these lingering symptoms or his attempts to obtain medical treatment to address them, nor has he detailed to whom he made requests for treatment or the timing of these requests. See generally Dkt. # 38. Upon the Court's review of defendant's BOP records, the only references to breathing issues and headaches after defendant's transfer to North Lake CI do not support defendant's claim that these symptoms were due to COVID-19, or that BOP neglected to respond to these health concerns. On February 25, 2021, defendant reported pain in his head, and the BOP medical records reflect that this was related to a "possible sinus infection due to history of deviated septum," and defendant received treatment. Dkt. # 38-1 at 5–6. In September 2020, defendant reported having difficulties breathing "the right way with [his] nose" because of his deviated septum, and the BOP staff member who responded to defendant's concern reported that the staff member would "see what [he or she could] do to" obtain the nose strips defendant requested. Dkt. # 38-1 at 67–68. Neither of these reported medical concerns reference a connection to COVID-19, and BOP records document that defendant has a history of a deviated nasal septum that predates the COVID-19

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 7

crisis. Dkt. # 38-1 at 132, 136, 151 (records noting deviated septum in 2019). Even assuming that defendant is currently experiencing shortness of breath and headaches, BOP records suggest these types of symptoms could be attributable to the preexisting deviated septum issue, not to lingering symptoms of COVID-19. Defendant has not sufficiently supported his claim that he is experiencing lingering symptoms of COVID-19, or that he has made repeated attempts to obtain medical treatment for these symptoms that BOP has failed to address.

Defendant also accuses BOP of failing to vaccinate him. Dkt. # 38 at 2, 7, 11. The government presents BOP medical records, however, reflecting that defendant received the J&J/Janssen COVID-19 vaccine the same day that defendant filed his motion. Dkt. # 45 at 2. According to clinical trials, the J&J/Janssen vaccine is 66.3% effective at preventing laboratory-confirmed COVID-19 illness, it has "high efficacy at preventing hospitalization and death in people who did get sick," and "[n]o one who got COVID-19 at least 4 weeks after receiving the J&J/Janssen COVID-19 Vaccine had to be hospitalized." Johnson & Johnson's Janssen, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (June 1, 2021) (last visited June 7, 2021). Now that defendant has been vaccinated, his argument regarding future susceptibility to COVID-19 lacks merit. "Courts in this circuit have found that a defendant's receipt of the COVID-19 vaccine weighs against granting compassionate release." United States v. Nash, No. CR-03-00059-001-PHX-JAT, 2021 WL 1969729, at *3 (D. Ariz. May 6, 2021) (citing United States v. Cortez, No. CR-18-00858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) (denying compassionate release because defendant had received vaccine); United States v. Grummer, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (same)). Given that defendant has not identified any medical conditions that make him more vulnerable to severe illness or death from COVID-19 based on current science, that COVID-19 rates at North Lake CI are low, and that defendant is now vaccinated, he has failed to present "extraordinary and compelling" reasons to warrant compassionate release. Having determined that defendant has not made the requisite showing of extraordinary and compelling reasons for compassionate release, the Court need not analyze

whether a reduction in defendant's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a).

### V.    CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 38) is DENIED. The government's motion to seal (Dkt. # 44) is GRANTED.

DATED this 11th day of June, 2021.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9